IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:20cr092 (DJN)

YVONNE A. WEBB,
Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Yvonne Webb's ("Defendant") Appeal of the Magistrate Judge's Decision to the District Court (ECF No. 12), moving to set aside the Magistrate Judge's finding of guilt, or alternatively, Defendant's sentence. On August 26, 2020, Defendant noted her appeal from the August 12, 2020 Judgment issued by the Honorable Roderick C. Young, (then) Magistrate Judge,[1] which sentenced Defendant to two years' probation, including a special condition that Defendant serve a period of 10 days' imprisonment and pay a $250 fine (ECF No. 10). On September 8, 2020, Defendant filed her Opening Brief on Appeal to District Judge ("Def.'s Mem.") (ECF No. 14), and on September 18, 2020, the United States filed its Response Brief in Opposition to Defendant's Appeal ("Gov't Resp.") (ECF No. 15). Defendant has not filed a reply brief, and the time to do so has expired. Defendant raises two issues on appeal: (1) whether sufficient evidence existed to convict Defendant of obstruction of the mail; and (2) whether the sentence imposed was procedurally and substantively unreasonable under the circumstances.

---

[1] On September 24, 2020, the United States Senate confirmed Judge Young as a United States District Judge. He was then sworn-in on September 29, 2020.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons stated below, the Court hereby AFFIRMS the Magistrate Judge's findings and the sentence imposed.

## I. BACKGROUND

### A. Procedural History

On May 26, 2020, the United States filed a one-count criminal information against Defendant, charging her with obstruction of the mail, in violation of 18 U.S.C. § 1701 (ECF No. 1). This charge carries a maximum possible punishment of six months' imprisonment, a $5,000 fine, up to five years' probation and a $10 special assessment. Defendant initially appeared before Judge Young on June 18, 2020, and entered a plea of not guilty (ECF No. 2). A bench trial took place before Judge Young on August 12, 2020. The trial court found Defendant guilty and sentenced her from the bench on August 12, 2020 (ECF No. 9). Judge Young sentenced Defendant to two years of probation with the special condition of 10 days in jail, a $250 fine and a mandatory $10 special assessment. Defendant timely filed her Notice of Appeal of the Magistrate Judge's Sentence on August 26, 2020 (ECF No. 12).

### B. Trial Evidence

The evidence presented at trial included the testimony of six witnesses and eleven exhibits. (Tr. at 2.) As the evidence revealed, on January 14, 2020, Officer William Vinsh of the Prince George Police Department arrived at the scene of a crash on Route 625 in Prince George County. (Tr. at 11:6-8, 17-22.) The crash involved a single vehicle driven by Defendant. (Tr. at 11:24-25.) Because Defendant had sustained injuries in the accident, authorities transported her

to a hospital while a local towing company, Nobles Towing, towed Defendant's vehicle to a lot nearby. (Tr. at 12:3-4, 19:4-22.)

At the time of the accident, Defendant was using her personal vehicle to complete her duties as a rural mail carrier. (Tr. at 49:6-8.) Specifically, Defendant operated her vehicle from the right-hand side of the car, even though the vehicle's controls remained on the left-hand side. (Tr. at 82:10-20.) Defendant testified that, when delivering mail, she would collect outgoing mail from the passenger-side of the car and place the collected mail on the vehicle's dash, just above the steering wheel. (Tr. at 122:11-20.) Defendant testified that at no point would she reach into the back compartment of her vehicle while completing her route, but that sometimes she would recline the driver's seat to make room for the mail. (Tr. at 123:19-21, 125:15-18.)

As a result of the accident on January 14, undelivered mail from Defendant's car became strewn about the roadway and into the adjacent woods. (Tr. at 82:5-9.) Authorities called Beverly Wiggins, Postmaster of the Disputanta Post Office, to the scene to recover the mail and ensure its delivery. (Tr. at 45:13; 61:6-11.) Ms. Wiggins collected the mail strewn about the street and the mail remaining in the passenger compartment of the vehicle. (Tr. 61:21-22; 62:9-11.) She returned this mail to the Disputana Office, and other carriers delivered it later that day. (Tr. at 62:14-16.)

Approximately one month after the accident, Defendant had still not recovered her vehicle from Nobles Towing. (Tr. 26:19-23.) Darrell Nobles, the company's owner, began to prepare the vehicle for disposal, a process that involved searching and clearing the vehicle. (Tr. 26:23; 27:11-14.) In the course of this search, Mr. Nobles located unrecovered mail in the back pocket of the driver's seat. (Tr. at 28:8-22.) Mr. Nobles called the Prince George County Police Department to recover the mail, and Officer James Shutt arrived at the lot to investigate the

discovery. (Tr. at 30:11-20, 41:23-25.) Officer Shutt testified that all of the recovered mail appeared to be celebratory greeting cards dating back to October 2019. (Tr. at 42:20, 43:3.) He noted that the seal on each envelope appeared broken and that someone had even attempted to re-tape some of them. (Tr. at 42:22-24.)

Officer Shutt subsequently contacted Ms. Wiggins, who arrived at the scene and began her own investigation. (Tr. at 43:7-12.) Ms. Wiggins testified that all of the mail found in the vehicle appeared "rifled" or tampered with, and that most of the mail constituted greeting cards sent from out-of-state senders to recipients on Defendant's Disputana postal route. (Tr. at 62:22-25, 63:1-3, 65:1-20, 72:18.) In Ms. Wiggins' experience, these kinds of cards generally contain money or gift cards, especially when people send them around the holiday season like the ones at issue here. (Tr. 72:22-24.) These cards from out-of-state senders contained postmarks, indicating that they had passed through a distribution center on specific dates before arriving in the Disputana office for delivery. (Tr. at 65:15-20.) The postmarks on these cards ranged from dates in mid-October 2019 to late November 2019, meaning that they had gone undelivered since those dates. (Tr. at 65:4-5, 66:24; Gov't Exhibit 4.)

Several of the cards did not contain postmarks but contained addresses of out-of-state recipients. (Tr. at 71:3-11.) As explained at trial, postal workers collect outgoing mail from customers on their routes and return the mail to an outgoing mail tub at the central post office on that same day. (Tr. at 95:5-16.) The mail then gets postmarked and sorted before the office ships each piece of mail to its destination. (Tr. at 95:5-16.) Therefore, the lack of postmarks on these cards indicated that Defendant had collected these cards from her route and failed to return them to the central office for processing. (Tr. at 71:3-11.) Ms. Wiggins confirmed this with her

4

testimony that at least one of the cards contained a return address located on Defendant's route. (Tr. at 71:13-19.)

Billy Trueman, Postmaster of the Waverly Post Office, also testified at trial. He confirmed that Defendant also worked a delivery route for his office and that some of the mail found in Defendant's vehicle came from this route during the time periods that she had worked. (Tr. at 91:1-15.) Trueman also testified that one of the cards without a postmark came from an address outside of Defendant's route as evinced by its return label. (Tr. at 95:1-4.) He averred that the only way that Defendant could have come into possession of this piece of mail was if she had picked it up from the post office's outgoing mail tub before the office had processed it for delivery. (Tr. at 95:5-16.) He stated that the office prohibits mail carriers from retaining any mail or taking anything out of the outgoing mail tub in the office. (Tr. at 71:5-12, 95:11-16.)

Defendant testified in her own defense and denied ever keeping any mail in her vehicle that the office required her deliver or that she collected from customers' outgoing mail. (Tr. 114:4-8.) She further denied every opening any deliverable or outgoing mail. (Tr. at 114:9-11.) However, she testified that no other person had occupied her car during the time period from October 2019 to November 2019, and that no explanation exists as to why outgoing pieces of mail were found in her car a month after she had collected them. (Tr. at 118:1-4, 120:16-21.)

### C. Defendant's Appeal

Defendant raises two arguments on appeal. First, she argues that insufficient evidence existed to convict her of obstruction of the mail. (Def.'s Mem. at 5.) Specifically, she argues that the evidence did not meet the "willful and knowing" prong of this charge. (Def.'s Mem. at 7.) Defendant also argues that the Magistrate Judge imposed a procedurally and substantively unreasonable sentence. (Def.'s Mem. at 5.) Specifically, Defendant states that the Magistrate

Judge failed to adequately explain the sentence imposed or why the court rejected the sentencing recommendations of both parties. (Def.'s Mem. at 11.) Defendant also posits that the sentence itself constituted an excessive sentence under the circumstances of this case. (Def.'s Mem. at 11.)

The Government responded to Defendant's appeal on September 18, 2020, arguing that the evidence presented at trial firmly supports Defendant's conviction, and that the sentence imposed did not constitute a plainly unreasonable sentence. (Gov't Resp. at 9, 13.) Specifically, the Government points to the fact that the sentence fell within the statutorily authorized range and that this case involves the repeated obstruction of mail over a two-month period. (Gov't Resp. at 13-14.)

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Criminal Procedure 58(g)(2)(B), a defendant may appeal a Magistrate Judge's judgment of conviction or sentence to a District Judge within fourteen days of entry. Fed. R. Crim. P. 58(g)(2)(D). A district court conducting an appellate review of the decision of a Magistrate Judge utilizes the same standards of review as applied by a court of appeals in reviewing a district court decision. Fed. R. Crim. P. 58(g)(2)(D). Accordingly, the Court reviews challenges to the sufficiency of evidence "by viewing it — including all reasonable inferences to be drawn therefrom — in the light most favorable to the government." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005) (citing *United States v. Hughes*, 542 F.2d 246, 248 (5th Cir. 1976)). The Court will only reverse findings of fact upon a finding of clear error, while it will review issues of law *de novo*. *Id.* at 306; *Barkhorn v. Ports America Chesapeake, LLC*, 572 F. App'x 192, 192 (4th Cir. 2014); *United States v. Leftenant*, 341 F.3d 338, 342-43 (4th Cir. 2003).

In reviewing the sufficiency of the evidence, the Court will determine whether substantial evidence exists in the record, "when viewed in the light most favorable to the government, to support the conviction." *United States v. Jaensch,* 665 F.3d 83, 93 (4th Cir.2011). "'[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Burgos,* 94 F.3d 849, 862 (4th Cir.1996) (*en banc*)).

When reviewing a sentence, the Court reviews it for reasonableness, applying an abuse of discretion standard. *United States v. LaFlame*, 541 F. App'x 255, 257-58 (4th Cir. 2013) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). This assessment includes a review of both the procedural and substantive reasonableness of the sentence. *Id.* The Court must ensure that the sentencing judge committed "no significant procedural error," including a "failure to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Lynn,* 592 F.3d 572, 575 (4th Cir. 2010). Absent a significant procedural error, the Court considers whether the sentence is substantively reasonable under the totality of the circumstances, including whether the judge "abused his discretion in determining that the § 3553(a) factors supported the sentence." *United States v. Diosdado–Star,* 630 F.3d 359, 366 (4th Cir. 2011). This analysis does not require that courts "provide a lengthy explanation or 'robotically tick through § 3553(a)'s every subsection.'" *United States v. Chandia*, 675 F.3d 329, 341 (4th Cir. 2012) (citing *United States v. Powell*, 650 F.3d 388, 395 (4th Cir. 2011)). The sentencing court need not explicitly discuss every factor and may give more weight to one factor over another when fashioning a sentence. *United States v. Pauley*, 511 F.3d 468, 476 (4th Cir. 2007) (citing *Gall*, 552 U.S. at 59; *Kimbrough v. United States*, 552 U.S. 85, 100-01 (2007)); *United States v. Johnson*, 445 F.3d 339, 345 (4th Cir. 2006).

The mere fact that the reviewing court "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the [lower] court." *Gall*, 552 U.S. at 51.

### III. ANALYSIS

Having reviewed the parties' briefs and the record of the proceedings, the Court perceives no basis on which to overturn the Magistrate Judge's judgment.

#### A. Sufficiency of the Evidence

The Court will first address Defendant's argument that the Magistrate Judge based the conviction upon insufficient evidence presented at trial. To convict a defendant of obstruction of the mail, the Government must prove beyond a reasonable doubt that the defendant (1) willfully and knowingly; (2) obstructed or retarded; (3) the passage of the mail. *United States v. Myrick*, 2011 WL 996729, at *2 (E.D. Va. Mar. 17, 2011) (citing *United States v. Schankowski*, 782 F.2d 628, 631 (6th Cir. 1986)); *United States v. Fleming*, 479 F.2d 56, 57 (10th Cir. 1973)). Defendant concedes that the evidence proves the second and third elements of this offense, because her vehicle contained undelivered mail from her delivery routes. (Def.'s Mem. at 7.) However, she disputes that she "willfully and knowingly" kept this mail in her possession beyond the date that she should have delivered it. (Def.'s Mem. at 7.) The Government counters that the circumstantial evidence surrounding the mail's recovery amply supports a finding that Defendant retained the mail willfully and knowingly. (Gov't Resp. at 11-13.)

After reviewing the evidence in the light most favorable to the Government, the Court finds that a reasonable trier of fact could have found Defendant guilty beyond a reasonable doubt. *Jaensch*, 665 F.3d at 9. First, the testimony of both Postmaster Wiggins and Postmaster Trueman established that Defendant worked routes for their offices on specific dates that would

have put her in the direct path of the postmarked greeting cards sent to residents of Disputana and Waverly. (Tr. at 65-70, 90:21-25, 91:1-11, 92:3-23.) Wiggins' testimony further established that at least one card found in Defendant's vehicle without a postmark was sent from a Disputana address on Defendant's collection route. (Tr. at 71:13-19.)

Trueman testified that one of the cards without a postmark came from an address not on a route that Defendant worked for his office. (Tr. at 95:1-4.) Both postmasters stated that the only way a piece of mail could go without a postmark included: (1) if a mail carrier such as Defendant picked it up from a customer's outgoing mail and neglected to bring it back to the office for processing, or (2) if a mail carrier picked up a piece of outgoing mail from the post office's mail outgoing bin before the office processed it. (Tr. at 71:5-12, 95:5-16.) However, both postmasters affirmed that they did not authorize mail carriers to retain mail longer than a day or to take anything out of the outgoing mail tub in the office. (Tr. at 71:5-12, 95:11-16.) Further, no other individual occupied Defendant's vehicle during the relevant time period. (Tr. at 118:1-4, 120:16-21.) Together, this evidence reasonably demonstrates that Defendant acquired possession and control of these greeting cards through her own actions rather than the misconduct of another individual. The various geographic sources of the cards, the fact that they came from both incoming and outgoing mail, and the range of dates exhibited by their postmarks also indicates a pattern of mishandling the mail, as opposed to an isolated or accidental incident, a fact that furthers the conclusion that Defendant obstructed the mail willfully and knowingly.

While Defendant testified that she delivered all different types of mail, Trueman and Wiggins testified that greeting cards from the 2019 holiday season represented the only kind of mail found in Defendant's vehicle and that, unlike other types of mail, this kind generally contains gift cards or cash. (Tr. at 72:19-24, 96:15-20, 109:18-23.) Wiggins also testified that

each of these cards appeared to have been tampered with, opened and resealed. (Tr. at 65:21-25, 66:1-4, 67:7-12, 71:22-25.) One card appeared ripped in half. (Tr. at 70:22-25, 71:1-4.) Neither Defendant nor any other witness offered an explanation as to why Defendant retained these cards, and only these cards, more than two to three months beyond their original postmark dates. Additionally, the location of the mail when recovered from the vehicle established that Defendant handled these greeting cards differently than any other piece of mail. Defendant testified that she never reached into the back seat of her vehicle when handling the mail, and that she would place any outgoing mail recovered from a mailbox on the dashboard of her car. (Tr. at 122:18-20, 123:19-21). Yet, Nobles and Officer Shutt found all of these greeting cards, together, in the back seat pocket of the vehicle. (Tr. at 29:6-15.)

Based on these facts, a trier of fact could reasonably conclude that Defendant had knowingly and willfully obstructed the passage of the mail. Even though Defendant handled all kinds of mail, authorities only found greeting cards in her car, stashed in a location separate from the areas that she regularly stored deliverable mail. By Defendant's own testimony, she never reached into the back seat of her car during her delivery route and no other person had access to her vehicle during the relevant times. Thus, one could reasonably conclude that she had willfully stored these cards in this location. Further, the cards, known to contain cash during the holiday season, appeared opened and "rifled," indicating that the mail had not just escaped Webb's notice and slipped into the back of her vehicle, but that she had knowingly retained the cards to search through them. Finally, the volume of mail found and the timeline of their postmark dates further underscores the conclusion that their presence in Defendant's vehicle did not result from accidentally overlooking them, but rather as part of an ongoing pattern of willful and knowing retention.

Therefore, the evidence at trial provided a reasonable basis for the Magistrate Judge to conclude that the Government had proven the elements of obstruction of the mail beyond a reasonable doubt.

### B. Unreasonableness of the Sentence

Defendant also challenges both the procedural and substantive reasonableness of her sentence, arguing that the Magistrate Judge failed to adequately explain the basis for the sentence. (Def.'s Mem. at 10.) Specifically, the trial court offered no explanation as to why it imposed a sentence other than the standard sentence in obstruction of mail cases, why it did not allow for intermittent confinement or why the circumstances of Defendant's crime necessitated an additional year of probation. (Def.'s Mem. at 11.) Defendant further argues that a sentence of 10 days in jail and two years' probation constitutes an excessive punishment under the circumstances. (Def.'s Mem. at 11-12.) The Government counters that the Magistrate Judge actively engaged in fashioning an appropriate sentence by interrupting both parties during their arguments on sentencing and clarifying their positions. (Gov't Resp. at 13; Tr. at 135:13-20, 138:4-11.) Additionally, the sentence imposed fell well-below the statutory maximum and necessarily reflected the aggravating factors presented by this case, including the repeated obstruction over a two-month period. (Gov't Resp. at 13-14.) The Government notes that Defendant also consented to the sentencing without a presentence investigation report or sentencing position papers. (Gov't Resp. at 14.)

When reviewing the reasonableness of an offense for which there exists no applicable sentencing guideline, such as a Class B misdemeanor like obstruction of the mail, the Court follows an even more deferential standard of reasonableness, considering whether the sentence is "plainly unreasonable." *United States v. Finley*, 531 F.3d 288, 294 (4th Cir. 2008); *see also*

*United State v. DeHaven*, 585 F. App'x 9, 9 (4th Cir. 2014) (per curiam). Indeed, "[w]hen there is no relevant sentencing guideline, it is impossible for the Sentencing Guidelines to be 'the starting point and the initial benchmark' of the sentencing process for any purpose, let alone for 'administration and to secure nationwide consistency.'" *Finley*, 531 F.3d 288 at 294 (quoting *Gall*, 552 U.S. at 596). As a result, the district court "has greater discretion in selecting an appropriate sentence that comports with the requirements of 18 U.S.C. § 3553." *Id.*

In making this determination, the reviewing court generally decides whether the sentence qualifies as unreasonable, following the same procedural and substantive considerations used in its review of other sentences. *United States v. Crudup*, 461 F.3d 433, 439-40 (4th Cir. 2006). Assuming the court finds as such, the court then looks to whether it constitutes a "plainly" unreasonable sentence — a concept synonymous with "clear" or "obvious." *Id.* In fact, "[the sentence] must run afoul of clearly settled law." *United States v. Thompson*, 595 F.3d 544, 548 (4th Cir. 2010). Reviewing courts applying this standard exercise greater flexibility in the considerations that they make when affirming a trial court judge's sentence. *See United States v. Washington*, 336 F. App'x 343, 346-47 (4th Cir. 2009) ("Because the district court failed to provide any explanation for why it imposed the 27-month sentence or what sentencing factors it considered, the sentence is at least arguably both procedurally and substantively unreasonable. Nonetheless, [the defendant's] sentence is not 'plainly' unreasonable because the sentence was within the recommended Guidelines range and does not exceed the applicable statutory maximum."); *United States v. Reyes*, 2008 WL 5170184 (W.D.N.C. Dec. 9, 2008) (taking into account Magistrate Judge's review of defendant's criminal history and conclusion that an earlier sentence had not had a deterrent effect on defendant's behavior in assessing whether his sentence was plainly unreasonable); *United States v. Orleans*, 2007 WL 1231697, at *2 (D. Md. Apr. 26,

2007) (affirming a sentence as not plainly unreasonable, because "[t]he sentence was well within the six-month period of imprisonment [the defendant] faced and was a valid exercise of [the judge's] discretion"); *United States v. Anderson*, 787 F. Supp. 537, 537 (D. Md. 1992) (considering defendant's past criminal record in assessing whether his sentence for a Class B misdemeanor was plainly unreasonable).

Applying this standard, the Court finds that the Magistrate Judge's sentence in this case was not plainly unreasonable, given Defendant's offense conduct, the Magistrate Judge's engagement during the arguments at sentencing and the statutory maximums for this charge. The Magistrate Judge sentenced Defendant to conditions that fell well within the statutory maximum for this offense. He committed no clear violation of settled law in setting the terms that he did. Further, Defendant's continuous obstruction over a nearly two-month period of time warranted the imposition of the sentence that she received. Neither party gives any indication that the Magistrate Judge relied on any erroneous facts or mistakes of law in making his decision. This Court also finds that the Magistrate Judge did not base his sentence on unreliable information and that his questions during the sentencing phase demonstrated his engagement with the positions put forth by both parties. For these reasons, the Court concludes that Defendant's sentence is not plainly unreasonable.

### IV. Conclusion

For the reasons stated herein, the Court hereby AFFIRMS the decision of the United States Magistrate Judge. An appropriate Order shall issue.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: November 13, 2020